UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:14-CV-107-FDW-DCK

TRADESTATION SECURITIES, INC.
    Plaintiff,

vs.

JESSE J. CAPONE and ANNE M. CAPONE,

    Defendants.

## ORDER GRANTING PRELIMINARY INJUNCTION

Plaintiff TradeStation Securities, Inc. ("TradeStation") brings this action pursuant to Federal Rules of Civil Procedure 57 & 65, 28 U.S.C. §§ 2201-2202, and Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4, for declaratory and injunctive relief to prevent an arbitration proceeding brought against it by Defendants Jesse J. Capone and Anne M. Capone ("Defendants") before the Financial Industry Regulatory Authority ("FINRA").[1] Before the Court is TradeStation's Emergency Motion for Preliminary Injunction (Dkt. No. 3), which has been fully briefed (Dkt. Nos. 4, 17, 34). Having fully reviewed the facts and legal arguments, having heard argument of counsel during the April 7, 2014, evidentiary hearing, and for the reasons discussed below, TradeStation has shown a likelihood of success that Defendants' claims are not arbitrable, that it would suffer irreparable harm if compelled to arbitrate, that the balance of equities weigh in its favor, and that the injunctive relief is in the public interest. Accordingly, TradeStation's Emergency Motion for Preliminary Injunction is **GRANTED**.

---

[1] TradeStation sought similar relief against the five other defendants, but the Court granted those Defendants' Motions to Dismiss for Lack of Personal Jurisdiction prior to reaching the merits of TradeStation's claims against them (Dkt. No. 16).

I.  **FINDINGS OF FACT**

1. TradeStation is a licensed securities broker-dealer, a futures commission merchant and a FINRA member which offers an online trading platform to self-directed investors who wish to make their own trading decisions and place their own orders remotely. Declaration of Herbert L. Walton ("Walton Decl.") at ¶ 3 (Ex. 1 to Dkt No. 4).

2. TradeStation was named as a respondent in an arbitration proceeding before FINRA, styled *Jesse J. Capone and Anne M. Capone v. TradeStation Securities, Inc.*, FINRA Arbitration No. 13-13483 ("FINRA Arbitration"). Walton Decl. at ¶ 8. TradeStation was also named a respondent in four other arbitrations brought by other parties with Statements of Claims nearly identical to those filed by the Defendants ("Related Arbitrations"). *Id.*

3. In response to the FINRA Arbitration and the Related Arbitrations, TradeStation submitted letter requests to FINRA's President and Director of Arbitration requesting that FINRA refuse to accept jurisdiction citing the same grounds as set forth in this matter. Walton Decl. at ¶ 9. On March 5, 2014, FINRA refused to dismiss two of the Related Arbitrations, stating "[t]he issue of whether claimant is a customer . . . is more appropriately determined by the arbitrators once appointed." *Id.* TradeStation withdrew its request in the FINRA Arbitration and the remaining Related Arbitrations, expecting the same ruling, and filed the instant case. *Id.*

4. Defendants' claims in the FINRA Arbitration arise from their alleged investments through Mitchell B. Huffman ("Huffman"). Statement of Claim at Preliminary Statement (Ex. 2 to Dkt No. 4). Defendants allege that Huffman perpetrated a "Ponzi Scheme" wherein Defendants invested their funds and incurred losses. *Id.* Defendants wired their investments to Huffman's personal Bank of America account. *Id.* at ¶ 21. Defendants further allege that Huffman then transferred at least some of Defendants' funds from Huffman's personal Bank of America account to Huffman's individual brokerage account at TradeStation. *Id.* at ¶ 23.

Defendants assert that TradeStation violated federal anti-money laundering laws and various FINRA Rules by failing to have certain procedures in place to protect against money laundering and to conduct proper due diligence on its clients, and that this makes TradeStation responsible for Huffman's alleged "Ponzi Scheme" activities against Defendants. *Id*. at Preliminary Statement.

5. Defendants have (i) never owned or maintained a TradeStation brokerage account or any other account with TradeStation; (ii) never signed or entered into a brokerage account agreement, arbitration agreement or any other agreement with TradeStation; (iii) never had business dealings or service arrangements of any kind with TradeStation; (iv) never purchased a security, or other asset or property, from or through TradeStation, or received investment or trading advice, or services of any kind, from TradeStation; (v) never been billed a fee or charge of any kind by, or paid a fee or charge of any kind to, TradeStation; and (v) never deposited with TradeStation, or received from TradeStation, any funds or assets. Walton Decl. at ¶ 5.

6. Huffman is not, nor was he ever, an agent, employee or associated person of TradeStation. Walton Decl. at ¶ 7.

7. Huffman's individual brokerage account relationship with TradeStation was solely in Huffman's name, and in and for which Huffman was the sole and exclusive owner and authorized representative. *Id.* at ¶ 6.

## II. CONCLUSIONS OF LAW

### *The Question of Arbitrability is for the Court to Decide, Not the Arbitrators.*

8. The Court finds that the question of arbitrability is properly before this Court. Where, as here, the dispute concerns whether the parties have agreed to arbitrate, and the parties have not clearly and unmistakably provided otherwise, the issue of arbitrability is for the Court and not the arbitrators to decide. *See Howsam v. Dean Witter Reynolds, Inc*.. 537 U.S. 79, 83

(2002) ("[A]rbitrability pursuant to the NASD [FINRA's predecessor] is a threshold question whether the parties have submitted a particular dispute to arbitration and is an issue for judicial determination."); *Local Union No. 637, Int'l Bhd. of Elec. Workers v. Davis H. Elliot Co.*, 13, F.3d 129, 132 (4th Cir. 1993) ("[T]he arbitrator's jurisdiction is a question for the court."). Therefore, the Court must determine whether Defendants' claims are arbitrable.

### *TradeStation has Established the Elements Required to Obtain a Preliminary Injunction.*

9. A party is entitled to the entry of a preliminary injunction if it makes four showings: (1) a likelihood of success on the merits; (2) irreparable harm if the injunction is not granted; (3) the balance of equities favors the movant; and (4) an injunction is in the public's interest. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Here, TradeStation has demonstrated its entitlement to a preliminary injunction.

10. TradeStation has a likelihood of success on the merits of its declaratory and injunctive relief claims, because it has no obligation to arbitrate Defendants' claims in the FINRA Arbitration.[2] There is no arbitration agreement between TradeStation and Defendants, and Defendants are not "customers" of TradeStation as required by FINRA Rule 12200.

11. Absent a written arbitration agreement, an investor can only compel a FINRA member to arbitrate if it is a "customer" of that FINRA member as set forth in FINRA Code Rule 12200. The FINRA Code does not define "customer" for purposes of Rule 12200; it merely indicates that a "customer" is not "a broker or dealer." *See* FINRA Code Rule 12100(i).

12. However, the Fourth Circuit, in three recent decisions, has concluded that the term "customer" refers to "an entity that is not a broker or dealer, who purchases commodities or

---

[2] The "likelihood of success on the merits" is the likelihood that TradeStation will obtain a declaratory judgment and injunctive relief against Defendants on the basis that Defendants have no grounds on which to compel TradeStation to arbitrate their claims. The merits of Defendants' underlying claims against TradeStation are irrelevant to the issue of whether TradeStation is required to arbitrate with Defendants.

4

services *from a FINRA member* in the course of the member's business activities, namely, the activities of investment banking and the securities business." *Morgan Keegan & Co. v. Silverman, Fin. Servs.,* 706 F.3d 562, 566 (4th Cir. 2013) (emphasis added); *see also UBS Financial Services, Inc. v. Carilion Clinic*, 706 F. 3d 319, 325 (4th Cir. 2013); and *Raymond James Financial Services, Inc. v. Cary*, 709 F.3d 382, 388 (4th Cir. 2013).

13. As stated above, no written agreement to arbitrate exists between TradeStation, and Defendants have not purchased commodities or services from TradeStation. Therefore, Defendants are not now, and have never been, "customers" of TradeStation under FINRA Rule 12200. TradeStation, therefore, has demonstrated a likelihood of success on the merits.

14. TradeStation will be irreparably harmed if it is compelled to arbitrate Defendants' claims when it has not agreed and is not obligated to do so. "[T]he harm suffered by an individual who is forced to arbitrate claims it did not agree to arbitrate is *per se* irreparable because it forces an individual to expend resources it cannot later recover." *Morgan Keegan & Co. v. Louise Silverman Trust,* No. JFM-11-2533, 2012 WL 113400, at *5 (D. Md. Jan. 12, 2012) (emphasis added).

15. The harm to TradeStation is immediate and pronounced. TradeStation would be forced to spend substantial time and resources defending Defendants' claims before FINRA. Moreover, if TradeStation is compelled to arbitrate, it may have the effect of waiving its rights to be heard by a judge and to obtain full and fair discovery and eliminating, or severely limiting, TradeStation's rights to appeal.

16. The balance of equities weighs in favor of an injunction. The only harm to Defendants if the preliminary injunction is granted is a delay in their pending FINRA Arbitration. If Defendants prevail, they will be able to resume the Arbitration. Conversely, the

potential harm to TradeStation will be significant and permanent: expending considerable resources in the Arbitration; waiving its rights to be heard by a judge; and eliminating its right to appeal.

17. The public interest would be served by enjoining Defendants from pursuing their claims against TradeStation in arbitration because (a) a person or entity not legally bound to arbitrate should not be compelled to do so, and (b) it is improper and an abuse of jurisdiction to engage or utilize the power of an organization (FINRA) under the SEC's authority which lacks the authority to arbitrate such claims. *Silverman*, 2012 WL 113400, at *6.

## III. BOND AMOUNT

18. Pursuant to Federal Rule of Civil Procedure 65(c), the Court may require a party seeking a preliminary injunction to give security "in an amount that the Court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." The Court finds that a total bond in the amount of $6,415.85 is appropriate. TradeStation shall post a Bond in that amount or deposit that amount with the Clerk of the Court as security.

IT IS THEREFORE ORDERED that

1. Plaintiff TradeStation's Emergency Motion for Preliminary Injunction is hereby **GRANTED**; and

2. Defendants Jesse J. Capone and Anne M. Capone are hereby enjoined, until further order of this Court, from pursuing their claims against TradeStation in FINRA Case No. 13-13483.

Signed: April 10, 2014

Frank D. Whitney
Chief United States District Judge